On or about July 27th, 1925, two deeds were made by Ellen and William Kenworthy. They were delivered to Clarence Van Duren. There was an endorsement that they were "to be held in escrow and to be placed on record after the decease of us both." The Kenworthys were at that time over seventy years old, and the wife had been ill for sometime with a nurse in attendance. One deed conveyed a property to their son, the other conveyed a property to their two remaining children, Mrs. Montgomery and Mrs. Varley. The property conveyed to the son was the more valuable. This was all the real estate they possessed. After the death of the grantors, the daughters started suit in this court in partition. The son counter-claimed by setting up the deeds.
Within a year after these conveyances were made proceedings delunatico were begun by the daughters which resulted in a finding that both Mr. and Mrs. Kenworthy were lunatics and had been incapable of managing their affairs for three years prior to the adjudication or two years prior to the making of the deeds.
This is a very brief summary of the admitted facts.
The contention of the daughters is that the Kenworthys never actually parted with title to the properties and the attempted conveyance was violative of our statute of wills. Let us consider the testimony on this point. Mr. Van Duren, who is a real estate agent accustomed to the drawing of deeds, although not a lawyer, says that the Kenworthys — for whom he had often done business — were very anxious to have him prepare the deeds. They said they did not want the grantees "disturbed at our deaths." The deeds were finally prepared and taken to the home of the Kenworthys for execution.
Two visits were made for this purpose. Mrs. Amelia *Page 85 
Crate, a nurse in charge of Mrs. Kenworthy, was present on both occasions, but in an outer room. She did not witness the actual signing of the documents. Her description of the mental condition of these old people indicates that their reasoning powers were, to say the least, impaired. She says Mrs. Kenworthy could not properly dress herself. She used the sitting room as a bath room. She could not remember her children and sometimes forgot the nurse herself.
Mr. Kenworthy also, according to this witness, was very forgetful. He could not purchase supplies at the stores unless a list or note of the articles wanted was given him. Her testimony as to the occasions when the deeds were signed is briefly this: Mr. Van Duren and Mr. Cook arrived. James, the son, was there. Mrs. Kenworthy did not recognize her visitors. James introduced them. The visitors went into the dining room with James and the Kenworthys and shut the door. After half an hour Mr. Kenworthy came out and said, "I don't know what the dickens they wanted with me in there and what they wanted. Do you know what those men wanted with me? And I told him I didn't know." The witness further says, "he acted excited like" and said "they wanted him to sign and he was not going to do it."
On the second visit the witness says Mr. and Mrs. Kenworthy failed to recognize Mr. Van Duren. The Kenworthys again went into the dining room with Mr. Van Duren and shut the door. Mr. Kenworthy returned to the outer room and said: "They got what they wanted and now they will give me a kick in the back side." "He said they wanted him to sign but he did not know what he had signed."
Witness also says that Mrs. Kenworthy told her that James wanted her to do something about the property which she did not want to do and wept while telling her story.
Mr. Van Duren relates what he told the Kenworthys as to the deed in the following language:
"Q. The deeds were delivered to you by Mr. and Mrs. Kenworthy and you were told to hold them until the death of both? A. The first one was delivered to me by Mr. Kenworthy and the second one was delivered to Mr. Cook with *Page 86 
instructions to give them to me to deliver them to me to put with the other deed and put away.
"Q. You had acted for Mr. and Mrs. Kenworthy on a number of prior occasions as to their property? A. Oh, yes.
"Q. Did you explain to them the effect of these deeds upon them? Did you tell them how these deeds would affect them? A. I did.
"Q. What did you tell them? A. I told them that these deeds would be effective only after they died, and the one they made to James Kenworthy would be his property after their death; and the deed for the Second street property would belong to Mrs. Montgomery and Mrs. Varley after their death.
"Q. After their death? A. Yes; that they were not effective at all until after they both died."
Under these circumstances can it be said that Mr. and Mrs. Kenworthy thoroughly understood the technical meaning of an escrow or that they wanted to immediately divest themselves of the title to all their real estate?
The law in this state as to deeds of this character is clearly laid down by Vice-Chancellor Leaming in the case of Rowley v.Bowyer, 75 N.J. Eq. 80. The learned vice-chancellor says, beginning at the bottom of page 81:
"The delivery of a deed of conveyance of real estate is essential to its validity. Its delivery is a matter of intention, and the acts and declarations of the grantor are evidence of his intention. It is not delivered unless or until it is the intention of the grantor to perfect the instrument and make it presently effective as a conveyance.
These elementary principles have been recognized in this court in Crawford v. Bertholf, 1 N.J. Eq. (Sax.) 458, 467;Woodward v. Woodward, 8 N.J. Eq. (4 Halst.) 779, 784;Martling v. Martling, 47 N.J. Eq. (2 Dick.) 122; Vreeland
v. Vreeland, 48 N.J. Eq. (3 Dick.) 56, 60; and in the supreme court in Folly v. Vantuyl, 9 N.J. Law (4 Halst.)153, 160; and in the court of errors and appeals in Ruckman
v. Ruckman, 33 N.J. Eq. (6 Stew.) 354, 358, and Schlicher
v. Keeler, 67 N.J. Eq. (1 Robb.) 635, 639. In Ruckman v. *Page 87 Ruckman it is said: "The essence of delivery consists in the intent of the grantor to perfect the instrument, and to make it at once the absolute property of the grantee, and his acts and declarations are the evidence of such intent." In Schlicher v.Keeler it is said: "A deed does not become operative until it is delivered with the intent that it shall become effective as a conveyance. To constitute a good delivery it must appear from the circumstances of the transaction that it was the grantor's intention to part with the deed, and thereby put the title in the grantee."
Consistently with the principles above defined it must be held that if the grantor handed the deed now in question to the third party with the instructions already stated and with an intention to part with all dominion and control over the deed to the end that it should be presently effective as a conveyance, there was a valid delivery of the deed and a consequent present transmission of title from the grantor to the grantee co-extensive with the grantor's purpose; if, on the other hand, the grantor's intention was that the deed should not permanently pass from his control the deed would be ineffective as a present conveyance for want of delivery, and it could not be supported in such case as a conveyance to take effect after the death of the grantor, as the transaction would then embody the essential elements of a testamentary devise and be violative of the terms of our statute of wills.
In Schlicher v. Keeler, 61 N.J. Eq. (16 Dick.) 394, a deed had been handed by the grantor to a third party with instructions for delivery to the grantee at the death of the grantor, and Vice-Chancellor Reed held that the delivery was sufficient and the deed, in consequence, presently operative as a conveyance. The case was reversed in the court of errors and appeals (67 N.J. Eq. (1 Robb.) 635), and it is now earnestly urged in behalf of complainant that the decision of the court of errors and appeals referred to is in conflict with the rule already stated. I am unable to adopt that view. The conclusion reached by the learned vice-chancellor is accurately stated in the headnote of the case as follows: "Where a grantor delivers a deed to a stranger as agent *Page 88 
of the grantee, to hold till the grantor's death, with no power of control reserved by the grantor, there is a valid delivery, though the grantee had not empowered the stranger to act for him in holding the deed." While the decree which was entered was reversed, I do not understand the opinion filed by the court of errors and appeals to repudiate, in any way, the legal principles defined by the learned vice-chancellor. By reference to page 639 of the opinion of the court of errors and appeals it will be observed that that court was unable to reach the conclusion of fact that the deed there in question had been delivered by the grantor to the third party as a wholly voluntary act. Assuming the delivery to have been to any extent involuntary, it is manifest that no defined intention upon the part of the grantor to place the deed beyond his control, or that the deed should become presently effective as a conveyance could be properly ascertained. The subsequent statement contained in the opinion to the effect that the deed could not be sustained as a grant, to take effect after the death of the grantor, because violative of the terms of the statute of wills, further discloses the view of the court to have been that the deed then under consideration had not been delivered with an intent upon the part of the grantor that it should be presently operative as a grant.
In the case of Watson v. McGill, 97 Atl. Rep. 43, Vice-Chancellor Leaming again discusses the question. He says (atp. 44): "As I understand the court of errors and appeals in that case [Schlicher v. Keeler, 67 N.J. Eq. 635] it is there determined that where there is no present intention that the title shall immediately pass from the vendor and become irrevocably vested in the vendee, or when the intention is that it shall not so pass until the death of the vendor that the transaction is testamentary in its nature and is controlled by our statute of wills — that if the owner of land is to be permitted to make a deed to another and deliver it to that party under an arrangement or understanding that the title is not to become vested in the vendee until the death of the vendor it is a will."
Mr. Van Duren, who drew the deeds and was present at *Page 89 
their acknowledgment, specifically says that he told the Kenworthys that the deeds "were not effective at all until after they both died." There is no evidence that the Kenworthys executed the instruments with any other end in view. Clearly this is not a present intention that title shall immediately pass from vendor, and become irrevocably vested in the vendee. In addition to this testimony from a witness produced to sustain the validity of these deeds we have the surrounding circumstances which I have outlined above: The age of the old couple, the evidence of the nurse as to their forgetfulness and mental uncertainty and the finding of the jury in the de lunatico proceedings that they could not properly manage their affairs at the time the deeds were executed. As Vice-Chancellor Leaming indicates in Rowley
v. Bowyer, supra, if the delivery was to any extent involuntary there could have been no clearly defined intention to place the deeds beyond their control. My opinion is that if the Kenworthys understood at all what they were doing when they executed the deeds in question, they thought they were making conveyances to become effective only at the time of their deaths. This, of course, is violative of our statute of wills. I am further of the opinion that when they signed the deeds they did not thoroughly understand what they were doing.
I shall, therefore, advise a decree dismissing the counter-claim and allowing the partition suit to proceed.